## Edwards, Appellant, *v.* Gimbel.

*Evidence—Record—Effect of bill of exceptions.*

The testimony of a witness is made a part of the record by a bill of exceptions in order that the appellate court may review the rulings of the trial court on its admission or rejection, but such testimony does not become evidence to be used as such in any subsequent controversy unless supported by the requisite proof.

If in the trial of another action or in the course of another proceeding, either party desires to authenticate the testimony given in a former trial, the part of the record of the former trial containing it, is not evidence of its verity. The reason is that the evidence is not given under the sanction of a judicial oath, which in the absence of statutory authority is necessary to make it admissible. For a like reason the bill of exceptions itself occupies no higher plane and cannot be offered to show what a witness testified to on a former trial.

An offer of a part of a record of a previous trial included in the bill of exceptions showing the testimony of a witness, the purpose of the offer being to contradict the witness, is not sustained by the Act of May 24, 1887, P. L. 199.

*Evidence—Testimony taken before coroner.*

The testimony taken before a coroner is not admissible in another proceeding, such as in an action of trespass for death, unless the authenticity of such testimony is duly established by proper proof under oath.

*Evidence—Memorandum to refresh memory—Witness.*

Where an investigator of an insurance company makes a memorandum of his investigation, and on the following day has the memorandum copied by a typewriter, and signs the copy, and sends it as a report to his superior officer, he may subsequently at the trial of the case growing out of the matter investigated, be permitted to refresh his recollection by referring to the typewritten copy of his memorandum.

*Negligence—Evidence—Charge of the court.*

In the trial of an accident case where there is only one witness who saw the accident who testifies to the alleged negligence of defendant, it is not error for the court to say to the jury that if they disbelieve the witness, the plaintiff cannot recover.

*Negligence — Death — Continuance of suit by administrator — Act of April 15, 1851, P. L. 674.*

In an action to recover damages for personal injuries where the plaintiff dies after the case is at issue, but before the trial, and his administratrix is substituted as plaintiff, the measure of damages is the loss which the deceased sustained by reason of his injury. In such an action there can be no recovery for the death of the deceased.

Argued Jan. 22, 1902. Appeal, No. 145, Jan. T., 1901, by plaintiff, from judgment of C. P. No. 3, Phila. Co., March T., 1896, No. 381, on verdict for defendants in case of Mary C. Edwards, Administratrix of Edward B. Edwards, Deceased, v. Benjamin Gimbel et al., trading as Gimbel Brothers. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before McMichael, J.

At the trial the evidence for the plaintiff tended to show that William B. Edwards was knocked down and run over by a wagon of the defendants on January 29, 1896, while Edwards was crossing Seventh and Market streets in the city of Philadelphia. Edwards brought an action of trespass of March 13, 1896, and died on August 4, 1897. His widow, Mary C. Edwards, was then substituted as plaintiff on the record. The case was tried three times; first, on October 14, 1897, when there was a verdict for plaintiff for $10,000, second, on October 31, 1898, when there was a verdict for plaintiff for $1,000. The third trial was on November 31, 1900. At the third and present trial, the following offer was made:

Mr. Gordon, for plaintiff, offers in evidence so much of the record in this case as shows the notes of testimony of the witness Hilles in the former trial to which his attention was particularly called.

Mr. Gordon: My offer is to show by the notes of the testimony signed by his honor, the trial judge, that the witness did at a former trial testify that his wagon run over the shoulder

of Mr. Edwards and that he was knocked down and that at least one wheel passed over his shoulder; for the purpose of contradicting the witness Hilles in his testimony now and also contradicting him when his attention was specifically called to this matter on his cross-examination.

Objected to.

The Court: I think you could prove that he said so and so if the record were competent. I exclude the excerpt of the evidence on the ground that you cannot offer part of a record, and that you cannot in this case offer all the testimony.

Mr. Gordon: I offer all the testimony of this witness.

The Court: I exclude it. My ruling is on the competency of the evidence. I think you are entitled to contradict the witness by competent evidence, but I do not regard an excerpt taken from the bill of exceptions in the prior case as competent evidence. [1]

Exception for plaintiff.

Mr. Gordon: I offer to read so much of the coroner's certified notes as refers to the testimony of the witness Hilles, on the subject of whether the wagon of the defendants had or had not run over the shoulder of Edwards.

Objected to. Objection sustained. Exception for plaintiff. [3]

Mr. Gordon: I also offer on all three of those propositions to read the testimony of the witness Sullivan upon the subject, whether the wheels of the wagon ran over the body of Edwards, to show that he testified differently at another time from what he testified in this trial.

Objected to. Objection sustained. Exception for plaintiff. [4]


The court charged in part as follows :

[Now, gentlemen of the jury, you heard the witness John J. Nestor examined and cross-examined, and you have heard the testimony which has been produced to impeach his character for veracity. It is for you to say whether you believe or disbelieve Nestor. That is your function and duty and you must discharge it fearlessly and honestmindedly. But as a trial judge, I instruct you that if you disbelieve Nestor, there is not suffi-

cient evidence upon which you can find a verdict for the plaintiff.] [7]

Defendant's points were as follows:

The plaintiff cannot recover damage for the death of said Edward Edwards, because it appears that his death did not ensue within a year and a day after January 29, 1896, the date of the alleged accident. You must take it as a presumption that cannot be rebutted, that the death was not caused by violence or injury. *Answer :* As to the first proposition, I affirm this part of it. The plaintiff cannot recover damages for the death of the said Edward Edwards. The reason following in the point I neither affirm nor disaffirm. [8]

The plaintiff cannot recover damages for the death of the said Edward Edwards, because damages therefor are not claimed in the amended statement of plaintiff's claim filed in this cause. *Answer :* That is affirmed. [9]

[For the sake of review, I shall endeavor concisely to give my reasons for affirming those two points in behalf of the defendants. This, being an action brought by the administratrix, is an action brought for the estate of the dead man, and is not an action brought by the widow for the death. The latter has a separate and statutory action.] [10, 11]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1, 3, 4) rulings on evidence as above; (5, 6) in permitting the witness Garrett to refresh his memory from a memorandum; (7–11) above instructions, quoting them.

*D. Webster Dougherty,* with him *James Gay Gordon,* for appellant.—The testimony of a witness at a former trial may be given in evidence to show that he testified differently on that occasion: Harden v. Hays, 9 Pa. 151 ; Evans v. Reed, 78 Pa. 417 ; Parker v. Donaldson, 6 W. & S. 132 ; Bull v. Towson, 4 W. & S. 567 ; Pratt v. Patterson, 81 Pa. 114 ; Phila. & Reading R. R. Co. v. Spearen, 47 Pa. 300 ; Walbridge v. Knipper, 96 Pa. 48.

There is also statutory authority for our right to have read the notes of testimony in evidence : Act of May 24, 1887 ; Taylor v. Preston, 79 Pa. 440 ; Connell v. O'Neil, 154 Pa. 582 ; Gregg Twp. v. Jamison, 55 Pa. 472.

That it is proper to admit the coroner's notes of testimony properly certified to show that a witness testified before him in direct contradiction to what he testified at the trial seems to be settled by analogy: Com. v. McLain, 99 Pa. 86.

A witness cannot be permitted to refresh his memory by notes or memoranda made by any other person than himself: Withers v. Atkinson, 1 Watts, 236.

*A. S. L. Shields*, for appellee.—There was no error in the action of the learned trial judge in refusing to admit as evidence in rebuttal so much of the record in the case as showed the notes of testimony of the witnesses Hilles and Sullivan on the former trial of the case: Hampton v. Speckenagle, 9 S. & R. 212; Edmiston v. Schwartz, 13 S. & R. 135; Voris v. Smith, 13 S. & R. 334; Ingham v. Crary, 1 P. & W. 389; Numbers v. Shelly, 78 Pa. 426; Donaldson v. Alexander, 29 Misc. Rep. (N. Y.) 356; 60 N. Y. Supp. 463; Crooks v. Bunn, 136 Pa. 368; Miller v. Hershey, 59 Pa. 64; Central Bank of Pittsburg v. Earley, 113 Pa. 477; Tasker v. Sheldon, 115 Pa. 107; State v. Hawkins, 81 Ind. 486; Simmons v. Spratt, 20 Fla. 495; Kirk v. Mowry, 24 Ohio, 581; Fisher v. Fisher, 131 Ind. 462; 29 N. E. Repr. 31; Bull v. Towson, 4 W. & S. 557; Roth v. Smith, 54 Ill. 431.

There was no error in refusing to admit as evidence in rebuttal so much of the coroner's certified notes of the testimony given at the inquest on the body of the appellant's intestate by the witnesses Hilles and Sullivan as referred to their testimony on the question as to whether or not the appellees' wagon had run over the shoulder of the appellant's intestate: Act of April 16, 1845, P. L. 538, section 9; Act of March 22, 1867, P. L. 532, section 1; Northampton County v. Innes, 26 Pa. 156; Crosby's Inquest, 3 Pitts. (Pa.) 425; Lancaster County v. Mishler, 100 Pa. 624; In re Coroner's Inquest, 1 Pa. C. C. Rep. 14; Jones's Inquest, 1 Pa. C. C. Rep. 19; Marvin Shaft Inquest, 3 Pa. C. C. Rep. 10; Pfouts's Case, 7 Pa. C. C. Rep. 265; Bender's Case, 8 Pa. C. C. Rep. 664; Watson v. Beaver County, 9 Pa. C. C. Rep. 495; McFadgen v. Chester County, 10 Pa. C. C. Rep. 124; Witmore's Inquest, 14 Pa. C. C. Rep. 463.

The learned trial judge did not err in permitting the witness

Garrett to refresh his recollection from the memorandum made by a typewriter from the witness's memorandum book, since he testified that the memorandum was copied by the typewriter from his report the day after the occurrence noted, and was signed by him at the time, and was his report: Queen v. Langton, L. R. 2 Q. B. D. 296; Flint v. Kennedy, 33 Fed. Repr. 820; Card v. Foot, 56 Conn. 369; Cameron v. Blackman, 39 Mich. 108; Hudnutt v. Comstock, 50 Mich. 596; Culver v. Scott, 55 N. W. Repr. 552; Topham v. M'Gregor, 1 C. & K. 320; Com. v. Ford, 130 Mass. 64; Huff v. Bennett, 6 N. Y. 337; Com. v. Clancy, 154 Mass. 128; Atchison, etc., R. R. Co. v. Lawler, 58 N. W. Repr. 968; Striker v. McMichael, 1 Phila. 89.

OPINION BY MR. JUSTICE MESTREZAT, March 3, 1902:

The first assignment alleges error in excluding testimony offered by the plaintiff in rebuttal. Hilles, a witness for the defendants, having testified to certain matters material to the issue, the plaintiff desired to impeach his credibility by showing that he had testified differently on a former trial. It appears by the record that " Mr. Gordon, for the plaintiff, offered in evidence so much of the record in this case as shows the notes of testimony of the witness Hilles in the former trial to which his attention was particularly called." Without any objection by counsel of the defendants or ruling by the court on the offer, another offer was made by the plaintiff's counsel " to show by the notes of testimony signed by his honor, the trial judge," that Hilles, a witness for the defendants who testified on the present trial, had testified differently on a former trial of the same case. The court excluded the testimony. The plaintiff's counsel then said, " I offer all the testimony of the witness." The court refused to admit the offer and the record shows that an " exception for the plaintiff " was noted.

In this condition of the record it is by no means clear what the plaintiff's offer was and what the court ruled upon. This assignment, therefore, might with propriety be dismissed for uncertainty. From the argument of counsel, however, it may be inferred and we will assume that the plaintiff's offer was to put in evidence in rebuttal so much of the record as showed the notes of testimony of the witness Hilles on a former trial

of the case for the purpose of impeaching the credibility of the
witness. This offer upon its face was objectionable and should
have been excluded. The testimony in a case is no part of the
record unless made so by a bill of exceptions. The offer did
not show that the testimony of the witness Hilles was brought
upon the record by an exception, and hence the offer as made,
if admitted, would not have shown the testimony of Hilles on
the former trial. But if we concede what does not appear, that
the testimony was placed upon the record by a bill of exceptions
there was no error in rejecting the evidence. We have care-
fully examined all the decisions of this court cited by the learned
counsel of the plaintiff, and without referring to them in de-
tail, we see nothing to sustain his contention. The testimony
of a witness is made a part of the record by a bill of exceptions
in order that the appellate court may review the rulings of the
trial court on its admission or rejection. "They (notes of evi-
dence) are no part of the record," says the court in Livingston
v. Cox, 8 W. & S. 62, "except where they are incorporated in
a bill of exceptions; and then only for purposes of review."
The testimony becomes a part of the record for this purpose
but does not become evidence to be used as such in any subse-
quent controversy unless supported by the requisite proof. If
in the trial of another action or in the course of another pro-
ceeding, either party desires to authenticate the testimony, the
part of the record containing it is not evidence of its verity.
The reason is that the evidence is not given under the sanction
of a judicial oath, which in the absence of statutory authority
is necessary to make it admissible. For a like reason the bill
of exceptions itself occupies no higher plane and cannot be of-
fered to show what a witness testified to on a former trial. "The
evidence of a witness, as set forth in a bill of exceptions," says
Chief Justice McWHORTER in Simmons v. Spratt, 20 Fla. 495,
"is in itself nothing more than a subsequent statement by third
parties without the sanction of an oath, of their remembrance
of what his testimony was." In Kirk v. Mowry, 24 Ohio, 581,
the court admitted under objection a bill of exceptions to show
the testimony of a witness on a former trial. In reversing the
judgment on this ground, Chief Justice DAY, in speaking for
the Supreme Court of Ohio, says: "Conceding that it was com-
petent to prove what the testimony of the witnesses on the

former trial was, the question is whether it was competent to prove it in that manner. We think not. The bill of exceptions was taken under the statute for a specific purpose in that trial, and imports verity no further than the statutory purpose for which it was authorized. It was never intended to be used as evidence, in a subsequent trial of the case, of what was the testimony of the witnesses on the trial in which it was taken. Whenever it becomes competent to show, on a subsequent trial of the case, what testimony was given on a former trial, the usual modes of proof cannot be dispensed with by resort to the bill of exceptions taken for no such purpose." To the same effect are the rulings in many other states.

Nor do we think the Act of May 24, 1887, P. L. 199, sustains the offer, the subject of this assignment. The offer as we have reviewed it and as the trial judge in his rulings shows he understood it, was of part of the record included in the bill of exceptions showing the testimony of the witness Hilles taken on the former trial of the case, and not of a copy of the notes of the official stenographer certified by the trial judge. The record and not the notes of testimony was offered and the ruling of the court was made upon the offer in that shape. The first and fourth assignments are dismissed.

The plaintiff complains in his third assignment that the court erred in excluding his offer to read in rebuttal "so much of the coroner's certified notes as refers to the testimony of the witness Hilles, on the subject of whether the wagon of the defendants had or had not run over the shoulder of Edwards." The purpose of this offer was to show that Hilles testified differently before the coroner from what he testified on the trial. The plaintiff was entitled to show this fact to impeach the credibility of the witness, but the evidence he introduced to support his offer was, like the evidence given to show the testimony of the witness on the former trial, not competent to establish the fact. Even if the coroner's court in Pennsylvania was a court of record, the testimony taken before him would not be admissible in another proceeding unless its authenticity was duly established by proper proof under oath: Miles v. O'Hara, 4 Binn. 108. We have been referred to no statute in force in this state requiring a coroner to reduce to writing the evidence of witnesses testifying before him, except the British statute of I & II

Philip and Mary, which requires the coroner, "to put in writing the effect of the evidence given to the jury before him." That statute, however, applies only to inquests finding murder and manslaughter, and it is not alleged that such was the finding of the inquest in question. Not being required by law to take or preserve in writing the notes of testimony given before him, we see no reason why the evidence taken by the coroner and offered here should have been admitted without proof of its authenticity. It is open to the same objection and should be excluded for the same reason as the unproven notes of testimony taken on a former trial. We know of no decision that sustains the competency of such testimony. On the contrary, in the case of Lord Morely, Kelyng's Reports, 53, indicted for the murder of Hastings, the coroner's notes of testimony were proved by the oath of the coroner before they were admitted.

If, as suggested by the learned counsel for the appellants, the testimony of the witness on the former trial and before the coroner was so important to his client's cause and should have been admitted on this trial "in the interests of justice," we are at a loss to know why he did not make the testimony competent evidence by the usual and well recognized modes of proof. As it lacked this essential element of admissibility, the learned trial judge committed no error in excluding it.

Immediately after his conversation with Humphries, Garrett, an investigator of the Guarantor's Insurance Company, made a memorandum of it. The next day he had the memorandum copied by a typewriter and signed the copy, and sent it as a report to his superior officer. It therefore appears that while the conversation was fresh in his memory and his recollection of it was distinct, Garrett recognized the typewritten copy of his memorandum as an accurate transcript of it and a correct statement of the conversation. He at once attested the accuracy of the copy by subscribing his name to it. We think it was not error, under these circumstances, to permit him to refresh his recollection of the conversation by referring to the typewritten copy of his memorandum. The redirect examination of Garrett by the defendant was discretionery with the court. The fifth and sixth assignments are not sustained.

There is no merit in the seventh and twelfth assignments of error. It was the duty of the court to submit to the jury the

credibility of the witness Nestor, and as he was the only witness who saw the accident and who supported the plaintiff's contention as to the alleged negligence of the defendants, it was not error to tell them that if they disbelieved Nestor the plaintiff could not recover. If the plaintiff desired additional instructions on the effect of the evidence impeaching and sustaining Nestor's credibility, he should have requested the court to give them. Without Nestor's testimony, there was not sufficient evidence to convict the defendants of negligence.

Edward B. Edwards, the plaintiff's intestate, was injured in a collision with a wagon of the defendants on January 29, 1896. He brought this action on March 13, 1896, alleging that his injuries were caused by the negligence of the defendants. After the case had been put at issue and before the trial, Edwards died, and Mary C. Edwards, his administratrix, was substituted as plaintiff. Prior to the act of 1851, the action would have abated on the death of Edwards. But by the 18th section of the act of April 15 of that year, it was provided that no action, brought to recover damages for personal injuries, should abate by reason of the death of the plaintiff, but that his personal representative might be substituted and the action prosecuted to judgment. After the death of Edwards, the action was continued under this section of the act of 1851, and hence the measure of damages was the loss which the deceased sustained by reason of his injuries. There could be no recovery in this action for the death of Edwards, nor could an action for his death have been sustained under section 19 of the act of April 15, 1851: McCafferty v. Pennsylvania Railroad Co., 193 Pa. 339. This is practically what the trial judge told the jury in his answer to the points of the defendants which is the subject of the eighth, ninth, tenth and eleventh assignments. Read in connection with the other part of the answers to the first and second points, we are convinced that the last sentence in the answers did the plaintiff no harm.

The assignments of error are overruled and the judgment is affirmed.