J-S71013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES A. PAUCIELLO | : | |
| | : | No. 3437 EDA 2016 |
| Appellant | : | |

Appeal from the Judgment of Sentence October 6, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0005225-2016

BEFORE:   PANELLA, J., STABILE, J., and PLATT*, J.

MEMORANDUM BY PANELLA, J.                    **FILED MARCH 12, 2018**

Appellant, James A. Pauciello, appeals from the judgment of sentence imposed in the Court of Common Pleas of Philadelphia County after the trial court found him guilty of Escape, 18 Pa.C.S.A. § 5121(a). On appeal, he argues the Commonwealth failed to prove he intentionally failed to return to custody, thus rendering the evidence insufficient to sustain the conviction. We disagree and affirm.

Pauciello was serving a two-year state intermediate punishment sentence at the Department of Corrections' Community Corrections Center Number 4. His corrections counsellor gave him a day pass on May 8, 2016, Mother's Day, to visit his mother. Pauciello was due back at the center at 9:00 p.m. He never returned.

According to Pauciello, after spending the day with his mother, unknown

_____
* Retired Senior Judge assigned to the Superior Court.

assailants "jumped" him at a train station, leaving him "really, really banged up." N.T., Trial, 10/6/16, at 20. At some point on May 9, he called his father who took him to the emergency room. He was discharged that night at 10:53 p.m.[1] The next day, May 10, Pauciello called his corrections counsellor who told him to return to the center with his hospital discharge paperwork. Pauciello testified he "just basically wandered" around that day as he "had a really bad concussion." *Id*., at 21. He "wandered around" the next day, May 11, until, he claimed, he stopped a police officer and asked to return to the center. *Id*.

After listening to the testimony, the trial court said to Pauciello, "I don't see anything other than what you have to say. I don't have anything here to prove what you're saying is true and correct, and I don't think I believe you." *Id*., at 38-39. The trial court found him guilty of Escape, 18 Pa.C.S.A. § 5121(a), and immediately sentenced him to nine to 23 months' imprisonment. This timely appeal followed.

On appeal, Pauciello solely challenges the sufficiency of the evidence. "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Ballard*, 80 A.3d 380, 390 (Pa. 2013) (citation omitted). We must determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact

---

[1] The hospital paperwork submitted at trial did not list an intake time. *See* N.T., Trial, 10/6/16, at 37.

to find that each element of the crimes charged is established beyond a reasonable doubt. ***See Commonwealth v. Dale***, 836 A.2d 150, 152 (Pa. Super. 2003).

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." ***Commonwealth v. Bruce***, 916 A.2d 657, 661 (Pa. Super. 2007) (citation omitted). Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. ***See Commonwealth v. Kinney***, 863 A.2d 581, 584 (Pa. Super. 2004). "As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." ***Id***. (citation omitted). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Bruce***, 916 A.2d at 661 (citation omitted). Evidence is weak and inconclusive "[w]hen two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances…." ***Commonwealth v. Woong Knee New***, 47 A.2d 450, 468 (Pa. 1946).

We must determine whether the Commonwealth presented sufficient evidence to sustain the conviction. "A person commits an offense if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period." 18 Pa.C.S.A. § 5121(a). The Commonwealth had to prove Pauciello "intended unlawfully to remove himself from official detention." ***Commonwealth v. Hall***, 585 A.2d 1117, 1119 (Pa. Super. 1991).

- 3 -

There was no dispute as to Pauciello's incarceration at the center and that he knew he had to return there at the expiration of the May 8 day pass. *See* N.T., Trial, 10/6/16, at 19. Pauciello, however, never returned to the center. *See id*., at 15-16.

He maintains his hospitalization excuses his absence and negates his intent to unlawfully remove himself from detention. His hospitalization, however, occurred on May 9, a day after his expected return, and his discharge occurred that night. On May 10, he contacted his corrections counsellor who told him to return to the center with his discharge paperwork. He did not comply. Instead, he "wandered around" on May 10 and 11. The police did not recover him until May 11. And the trial court flatly disbelieved Pauciello's testimony that injuries from an attack caused his unwanted absence. Thus, while there is no question of his hospitalization on May 9, we can reasonably infer he did not intend to return thereafter.

Pauciello tries to analogize his case to *Hall* and *Commonwealth v. Edwards*, 595 A.2d 183 (Pa. Super. 1991), in an attempt to show the Commonwealth presented insufficient evidence. Both of those cases involved participants in work release programs. And in both, panels of this Court found that the appellants' behavior did not constitute substantial deviation from the terms of their work release agreements.

For instance, in *Hall*, the appellant left his work release program and did not go directly to work, but stopped at his girlfriend's for just an hour and then went to work. In *Edwards*, the appellant arrived back to custody late

from work on two occasions—six minutes late on one occasion and seven minutes on another. This case plainly stands in stark contrast to **Hall** and **Edwards**.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/12/18